## PANTAZE v. MURPHY.*

### In re NUGRAPE BOTTLING CO. OF TEXAS.

No. 6274.

Circuit Court of Appeals, Fifth Circuit.

Jan. 6, 1932.

E. G. Senter, of Dallas, Tex., for appellant.

Grace N. Fitzgerald, of Dallas, Tex., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, Charles D. Pantaze, sought to prove a claim of $3,304.23 against the estate of the Nugrape Bottling Company, a bankrupt, based on certain notes of the bankrupt secured by a chattel mortgage. On opposition by the trustee, the claim was disallowed and expunged by the referee. On review by the District Court, the ruling of the referee was affirmed.

The record is not as satisfactory as it might be, but it supports the following conclusions as to the material facts: The bankrupt, a Texas corporation, was engaged in the bottling business at Dallas, and Pantaze owned all the stock except 21 shares. On September 13, 1927, Pantaze entered into a written contract with B. D. Hogue, whereby he agreed to sell to Hogue all the capital stock of the company, which had been reduced to $50,000 par value, for $45,000. The amount of the existing liabilities of the company, except an issue of bonds outstanding, estimated at $4,500, which Pantaze agreed to pay and cancel, was to be deducted from the purchase price. It was determined that the outstanding liabilities, other than bonds, amounted to $37,624.28, leaving the amount due by Hogue at $7,345.72. Later, it was discovered that two items, one of $1,880.23 and the other of $900, had been improperly included in the liabilities. The contract provided that Hogue was to pay $4,000 in cash and give his notes for the balance, which were to be secured by a chattel mortgage on the plant and other physical assets of the corporation. The parties were advised by counsel that it would be illegal for the corporation to execute a chattel mortgage to secure the notes given by Hogue.

Pantaze paid off all the outstanding bonds, and they were delivered to Hogue, together with all the stock. Thereafter, on October 10, 1927, according to a minute entry of a purported meeting of the new board of directors, Hogue was authorized as president to execute three notes for the company, payable to himself, in the respective sums of $3,345.72, $1,880.23 and $900, and to secure them by chattel mortgage upon the physical assets of the company, ostensibly to reimburse him in the amount of $6,125.95 for money he had paid to retire the outstanding bonded indebtedness.

The canceled bonds were not preserved. Some of them were later found on the premises in a barrel, and no entry was made on the books at that time to reflect the transaction. The notes of the corporation and the chattel mortgage were assigned to Pantaze by Hogue as collateral security for

*Rehearing denied February 19, 1932.

Hogue's notes in the same amounts, and he paid the $4,000 in cash according to the contract. Subsequently other liabilities of the company, which should have been deducted from the purchase price of the stock, were discovered, and, together with some cash payments, were credited on the notes, leaving a balance at the date of adjudication in bankruptcy, July 18, 1927, of $3,304.23, upon which the claim of Pantaze is predicated.

■ It is contended by appellant that the notes of the company secured by the chattel mortgage were substituted for the bonded indebtedness, which was a valid existing obligation, and therefore the bankrupt received full consideration for them. This theory is untenable.

No doubt, as between Pantaze and Hogue, the transaction was in good faith, and, if bankruptcy had not intervened, there would have been no one to complain. But it was clearly the intention of Pantaze and Hogue that the bonded indebtedness should be paid off and disposed of by the former before the sale of the stock was consummated. That intention must govern. When Pantaze paid off the bonds, they ceased to exist and could not be revived by the subsequent execution of the notes, secured by the chattel mortgage. Union Tr. Co. v. Ill. Midland Railway Co., 117 U. S. 434, 6 S. Ct. 809, 29 L. Ed. 963; Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868. As Hogue was in complete control of the corporation, the directors' meeting which authorized the chattel mortgage was a mere gesture, without any legal effect, and the transaction was simply a subterfuge to carry out the original intention, expressed in the contract, of securing his personal notes. The corporation received no consideration whatever for its notes and the chattel mortgage.

■ It is elementary that a corporation cannot obligate itself for the debt of another unless organized for that purpose, which is not the case here. Such transactions are ultra vires and voidable at the instance of creditors and, of course, the trustee in bankruptcy. Richardson v. Green, 133 U. S. 30, 10 S. Ct. 280, 33 L. Ed. 516; Carter v. Bogden (C. C. A.) 13 F.(2d) 90; Bowman Lumber Co. v. Pierson, 110 Tex. 543, 221 S. W. 930, 11 A. L. R. 547; Farracy v. Security Nat. Bank (Tex. Civ. App.) 4 S.W.(2d) 331; Newton v. Houston Hot Well Imp. Co. (Tex. Civ. App.) 211 S. W. 960.

The record presents no reversible error. Affirmed.