In re APF CO., et al., Debtors.

Joseph A. Pardo, Trustee of FPA
Creditor Trust, Plaintiff,

v.

William Gonzaba, M.D. and William
Gonzaba, M.D., A Professional Associ-
ation, d/b/a Gonzaba Medical Group,
A Texas Professional Association, De-
fendants.

Bankruptcy No. 98–1596(PJW).
Adversary No. 00–830.

United States Bankruptcy Court,
D. Delaware.

April 26, 2004.

Brendan Linehan Shannon, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, Raymond W. Battaglia, Oppenheimer, Blend, Harrison & Tate, Inc., San Antonio, TX, for Defendants, William Gonzaba, M.D. and William Gonzaba, M.D., a Professional Association d/b/a Gonzaba Medical Group, a Texas Professional Association.

Dennis J. O'Grady, Joseph L. Schwartz, Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, NJ, Neil B. Glassman, Jeffrey M. Schlerf, The Bayard Firm, Wilmington, DE, Co–Counsel for Plaintiff, Joseph A. Pardo, Trustee of FPA Creditor Trust.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion to dismiss for failure to state a claim

and the motion for a more definite statement (Doc. # 6) filed by William Gonzaba, M.D. and William Gonzaba, M.D. A Professional Association, d/b/a Gonzaba Medical Group, a Texas Professional Association ("Defendants"). By its complaint, Joseph A. Pardo, Trustee of FPA Creditor Trust, ("Trustee") seeks to recover alleged fraudulent and/or preferential transfers. For the reasons set forth below, the Court will (1) deny Defendants' motion to dismiss count one, (2) deny the motion for a more definite statement as to count two, and (3) grant the motion for a more definite statement as to count three.

## BACKGROUND

APF Co. f/k/a FPA Medical Management ("FPA") operated a national physician practice management company which acquired, organized and managed primary care physician practices that contracted with health maintenance organizations. In October and November 1995, FPA and Defendants entered into a transaction whereby FPA acquired Gonzaba Management Services Organization, Inc. and OPSU Inc. d/b/a Gonzaba Surgical Center. A series of agreements resulted in the following:

(1) FPA purchased from William Gonzaba ("Gonzaba") all of the issued and outstanding shares of capital stock in the related corporations on October 12, 1995. The stock purchase agreement was amended and modified on November 9, 1995.

(2) FPA assumed certain liabilities of the medical group.

(3) On November 9, 1995, FPA paid Gonzaba $13,840,000 as part of the consideration for the stock.

(4) Additional consideration for the stock included a convertible promissory note, dated November 9, 1995, for

$2,500,000 and a nonconvertible note for the same amount.

(5) To secure payment of the notes Gonzaba was granted a security interest in the medical corporations' assets, whereby a security agreement was issued on November 9, 1995 and, on the same date, FPA pledged its shares in the corporations to Gonzaba, evidenced by an additional security agreement.

(6) FPA transferred 175,097 shares of FPA common stock as additional consideration.

On July 19, 1998 FPA filed a voluntary petition for relief in this Court under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").[1] The plan was confirmed on May 26, 1999 and all rights and assets of FPA were transferred to a trust, which was created for the benefit of FPA's unsecured creditors, and the trustee was appointed. FPA made payments under the promissory notes from the date of the notes until the date the petition was filed, including payments during the ninety days before the petition.

## DISCUSSION

Trustee filed a complaint to recover alleged fraudulent and/or preferential transfers arising out of Defendants' sale of their businesses to FPA. The complaint includes three counts: (1) fraudulent transfers under § 548; (2) fraudulent transfers under state law pursuant to § 544; and (3) preferential transfers under § 547. The instant motion includes both a motion to dismiss count one and a motion for a more definite statement with regard to counts two and three.

1. Individual sections of the Bankruptcy Code will be cited herein as "§ ___."

A. Motion to Dismiss

Pursuant to Fed. R. Bankr.P. 7012, Defendants move to dismiss count one for failure to state a claim upon which relief may be granted. A motion to dismiss "should be granted 'if it appears to a certainty that no relief could be granted under any set of facts which could be proved.'" *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court will accept as true all of the allegations in the complaint and view them in the light most favorable to the nonmoving party. *See Hechinger Inv. Co. v. M.G.H. Home Improvement, Inc. (In re Hechinger Inv. Co.)*, 288 B.R. 398, 400 (Bankr.D.Del.2003) (citing *Morse*, 132 F.3d at 906).

Section 548 provides in relevant part:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or *within one year before the date of the filing of the petition* . . . .

11 U.S.C. § 548(a)(1)(2003) (emphasis added).

Defendants claim that Trustee is not entitled to relief under any set of facts because "all of the Transfers (except for the Payments on account of the Notes) occurred on or about the November 9, 1995 Closing Date," (Doc. # 6 at 4), which was almost three years before the petition date, July 19, 1998 and, therefore, outside the one year statutory period. Furthermore, Defendants claim that the payments on the promissory notes made during the one year period before the petition are not recoverable because they were made on account of an antecedent debt.

In its response to the motion, Trustee effectively concedes that the transfers which occurred prior to the one year period are not covered by the first count. Thus, the only issue is whether the payments made on the promissory note during the one year period can be avoided as a § 548 fraudulent conveyance.

Defendants state their position as follows:

Courts have held that the determination of reasonably equivalent value is a two-step process. First the court must determine whether the debtor received value. Second, the Court must examine whether the value received is reasonably equivalent to the value transferred. *Anand v. National Republic Bank of Chicago*, 239 B.R. 511, 516–517 (N.D.Ill. 1999), *In re Les Mouches Fashions, Ltd.*, 24 B.R. 509, 516 (Bankr.S.D.N.Y. 1982). Section 548(d)(2)(A) specifically provides that satisfaction of an antecedent debt of the Debtor constitutes value. Plaintiff does not allege that the Payments made by FPA to the Defendants exceeded the amount of the obligations represented by the Notes. Consequently, the value transferred to Defendants represented by the Payments was precisely equal to the value received by FPA represented by a dollar for dollar credit on the Note obligations. As a matter of law, the Court must conclude from the face of the Complaint that Debtor received reasonably equivalent value on account of the Payments.

(Doc. # 6 at 5.)

In response, Trustee argues that the two cases relied upon by Defendants are distinguishable and asserts that the holding in *Pajaro Dunes Rental Agency, Inc. v. Spitters (In re Pajaro Dunes Rental Agency, Inc.)*, 174 B.R. 557 (Bankr. N.D.Cal.1994) "is squarely on point and should be followed." (Doc. # 11 at 13.) I disagree.

Trustee states that in *Pajaro* the court found "that the $1 million note, which was executed more than one year before the debtor's bankruptcy filing, was avoidable as a fraudulent transfer." (Doc. # 11 at 12.) However, my reading of the case is that the court's holding was based on § 544, and consequently California law. The California code section did not have a one year time limitation as does § 548. *See* Cal. Civ.Code § 3439.04(b)(West 1997). Trustee also argues that the *Pajaro* court found that the interest payments made during the year prior to the petition, whereas the loan that was entered into more than a year before the petition, are avoidable. The court in *Pajaro* applied *quantum meruit* principles and, based on the "value-to-debt" ratio, found that a portion of the payments should be returned. *Pajaro*, 174 B.R. at 599. This reasoning, however, was not based on the Bankruptcy Code, but on equitable considerations raised by the specific facts of that case.

The one year reachback period and its relation to § 548(d)(2)(A), was addressed in *B.Z. Corp. v. Continental Bank (In re B.Z. Corp)*, 34 B.R. 546 (Bankr.E.D.Pa. 1983). The court in that case found that neither a loan nor its payments were avoidable because the transfer occurred outside the one year period. *Id.* at 548. The defendant granted the debtor a loan on September 9, 1979, which was secured by debtor's real property. *Id.* at 547. The debtor defaulted and the defendant foreclosed on its mortgage, thereby reducing the debt owed. *Id.* The debtor filed for bankruptcy on October 8, 1981. *Id.* Prior to the petition, the loan was renewed twice, where one renewal occurred within the one year before the petition; payments were also made on the loan during the

three months before the petition. *Id.* With regard to the debtor's complaint attempting to avoid the transfers under § 548 the court found:

> [T]he loan was made prior to the one year period and thus is not avoidable under § 548. The renewal of the loan occurring within the one year period would not be avoidable under § 548(a)(2) since § 548(d)(1) provides that the renewal is deemed to have occurred at the time of the granting of the original loan because the loan was "so far perfected" .... The loan payments made within one year prior to the filing of the petition are not avoidable since under § 548(d)(2)(A) the payments were made for value, i.e., "the satisfaction of ... [an] antecedent debt of the debtor."

*Id.* at 548.

For the reasons stated by the Court in *B.Z. Corp.*, I find that the payments made on the promissory note were made for value—satisfaction of an antecedent debt. However, this conclusion does not result in the dismissal of count one.

Both Defendants and Trustee address the § 548 count only with respect to § 548(a)(1)(B)—constructively fraudulent transfers. But count one of the complaint also asserts a § 548(a)(1)(A) claim—actual fraudulent intent. (Doc. # 1 at 6.) As to the latter, reasonably equivalent value is irrelevant. Since Defendants have not addressed this part of count one the motion will be denied.

**B.  Motion for a More Definite Statement**

Rule 12(e) of the Federal Rules of Civil Procedure allows the court to strike a pleading that is too ambiguous or vague.[2]

---

2. Fed.R.Civ.P. 12(e) is made applicable to adversary proceedings by Fed. R. Bankr.P. 7012, and specifically states:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required

### 1. Count Two—Fraudulent Transfer

Count two of Trustee's complaint alleges that transfers made by Defendants to FPA were fraudulent under nonbankruptcy law. According to Rule 9(b) of the Federal Rules of Civil Procedure, an averment of fraud must be pled with particularity, Fed.R.Civ.P. 9(b), including a claim for fraudulent transfer. *See Amoco Chem. Co. v. Tex Tin Corp.*, 925 F.Supp. 1192, 1212 (S.D.Tex.1996); *see also Levitt v. Riddell Sports, Inc. (In re MacGregor Sporting Goods, Inc.)*, 199 B.R. 502, 515 (Bankr.D.N.J.1995) (applying Rule 9(b) to a fraudulent conveyance). The purpose of this rule is to "place the defendants on notice of the precise misconduct with which they are charged ...." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). But "in the bankruptcy context, Rule 9(b) should be interpreted liberally, particularly when the trustee ... is bringing the action." *MacGregor*, 199 B.R. at 514–15.

In complaint paragraphs 19 through 27 (which are incorporated into count two) Trustee enumerates and labels each of the transactions related to FPA purchase of Defendants' businesses. For example:

> 20. In connection with the Transaction, FPA and the Seller executed a series of agreements, including a Stock Purchase Agreement dated October 12, 1995, ... pursuant to which FPA purchased from the Seller all of the issued and outstanding shares of capital stock of the Gonzaba Corporations (the "Stock Transfer").

> \*   \*   \*   \*   \*   \*

> 22. As part of the consideration for the Stock Transfer, on or about November 9, 1995 (the "Closing Date"), FPA paid the Seller cash of approximately $13,840,000 (the "Cash").

(Doc. # 1 at 4–5.)

These paragraphs are sufficiently stated as to put Defendants on notice to the specific misconduct alleged, and therefore, I find that count two survives the motion for a more definite statement.

### 2. Count Three—Preferential Payment

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2), which will "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which its rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In *Valley Media, Inc. v. Borders, Inc.*, in an attempt to provide guidance in preference action, I set forth several factors that should be included in a preferential transfer claim: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer." *(In re Valley Media)*, 288 B.R. 189, 192 (Bankr.D.Del.2003) (citing *Posman*, Adv. Pro. No. 97–245, at 6). These facts, if included, would put a defendant on notice as to the basis of the plaintiff's complaint.

Clearly, Trustee's count three does not address any of the factors discussed in *Valley Media*. Moreover, al-

---

to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.... If the motion is granted and the order of the court is not obeyed within 10 days after notice ... the court may strike the pleading to which the motion was directed ....

Fed.R.Civ.P. 12(e).

though the third count does incorporate paragraphs one through thirty-six, none of those paragraphs discuss any transfers that occurred during the 90 day preference period. The complaint did not even assert a total amount of the transfers, and such an assertion has been found to be insufficient. *See TWA Post Confirmation Estate v. Marsh USA Inc. (In re TWA Post Confirmation Estate),* 305 B.R. 228, 232–33 (Bankr.D.Del.2004). The focus of the complaint is the alleged fraudulent transfers, which took place when the business was sold in 1995—long before the preference period. As a result the motion for a more definite statement with regard to count three will be granted.

Trustee will be given thirty (30) days to file an amended complaint to particularize count three.

## CONCLUSION

For the reasons set forth below, the Court will deny Defendants' motion to dismiss count one. The Court will deny the motion for a more definite statement as to count two, but will grant that motion with respect to count three.