In re DBSI, INC., et al., Debtors.

James R. Zazzali, as Trustee for the Debtors' Jointly–Administered Chapter 11 Estates and/or as Litigation Trustee for the DBSI Estate Litigation Trust, Plaintiff,

v.

1031 Exchange Group,
et al., Defendant.

Bankruptcy No. 08–12687(PJW).
Adversary No. 10–54648(PJW).

United States Bankruptcy Court,
D. Delaware.

Aug. 14, 2012.

Jami B. Nimeroff, Brown Stone Nimeroff, LLC, Attorneys at Law, John D. Demmy, Maria Aprile Sawczuk, Stevens & Lee, P.C., Garvan F. McDaniel, Bifferato Gentilotti LLC, Wilmington, DE, Monte Neil Stewart, Belnap Stewart Taylor & Morris, PLLC, Boise, ID, Anne R. Myers, Kaufman Dolowich Voluck & Gonzo LLP, Blue Bell, PA, for Certain Defendants Listed on Exhibit A.

Natasha M. Songonuga, Christopher Viceconte, Gibbons P.C., Stephen W. Spence, Stephen A. Spence, Phillips, Goldman & Spence, P.A., Wilmington, DE, Dale E. Barney, Mark B. Conlan, Gibbons P.C., Newark, NJ, Steven J. Mitnick, Mitnick & Malzberg, P.C., Frenchtown, NJ, for James R. Zazzali, Litigation Trustee for the DBSI Estate Litigation Trust.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion concerns the Motion of Abe Lee Realty and Others to Transfer Venue ("the Motion") filed by certain defendants (the "Movants")[1] in this adversary proceeding. (Doc. # 150.) For the reasons described below, I will deny the Motion.[2]

---

1. The 130 Movants are listed on Exhibit A (as revised) to the Motion. (Doc. # 528.)

2. A number of other defendants filed joinders to the Motion. (Docs. ## 171, 172, 286,

## Background

This adversary proceeding arose from the bankruptcy cases of DBSI, Inc. ("DBSI") and a number of its affiliates (collectively, "Debtors"), filed on or about November 10, 2008. FOR 1031 LLC ("FOR 1031"), a DBSI affiliate, filed on November 10, 2008. The history of the DBSI bankruptcy cases has been extensively chronicled in prior decisions from this Court[3], so only a brief summary of the facts relating to this adversary will be provided here.

This action was commenced by James R. Zazzali, Litigation Trustee for the DBSI Estate Litigation Trust ("Trustee"), on November 5, 2010. (Doc. # 1.) Trustee subsequently filed an amended complaint on November 10, 2010 (the "Amended Complaint"). (Doc. # 3.) In the Amended Complaint, Trustee asserts causes of action for the avoidance and recovery of fraudulent transfers under sections 544, 548, 550, and 551 of the Bankruptcy Code and Idaho state law; declaratory judgment related to the Securities Act of 1933 and the Securities Exchange Act of 1934; unjust enrichment; rescission; and disallowance of claims pursuant to section 502 of the Bankruptcy Code.[4] Exhibit A to the Amended Complaint lists the name and city/state/zip code of each defendant, including Movants. Only one of the Movants is located in Idaho. (Doc. # 3, Ex. A.) Exhibit B lists several hundred transfers (the "Transfers") from FOR 1031 and other DBSI entities to Movants and other

defendants. For each Transfer, Trustee lists the amount, date, and number of each check or transaction, and the names of the transferee/defendant and the transferor.

## Jurisdiction

This Court has jurisdiction over this core[5] matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334.

## Discussion

■ Generally, "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a). At the court's discretion, however, it "may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The moving party bears the burden of demonstrating, by a preponderance of the evidence, the need for a transfer. *Hechinger Liquidation Trust v. Fox (In re Hechinger Inv. Co. of Del., Inc.)*, 296 B.R. 323, 325 (Bankr. D.Del.2003). *See also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

■ The Third Circuit has enumerated a number of factors that courts should consider in addition to those listed in § 1412. *Hechinger*, 296 B.R. at 325. Those factors include:

(1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) the location of books and records and/or the possibility

---

292.) I have reviewed these joinders, and conclude that my ruling on the Motion disposes of the joinders as well.

**3.** *See, e.g., Zazzali v. 1031 Exch. Grp., LLC*, 467 B.R. 767, 769–70 (Bankr.D.Del.2012).

**4.** As of the writing of this opinion, the declaratory judgment, rescission, and disallowance of claims counts had been dismissed without

prejudice for failure to state a claim. (Doc. # 537.)

**5.** Motions to transfer venue are core proceedings. *OCB Rest. Co., LLC v. Vlahakis (In re Buffets Holdings, Inc.)*, 397 B.R. 725, 727 (Bankr.D.Del.2008) (citing *Brizzolara v. Fisher Pen. Co.*, 158 B.R. 761, 767 (Bankr.N.D.Ill. 1993)).

of viewing premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.

*Id.* (citing *Jumara,* 55 F.3d at 879–80). I will discuss each factor in turn.

### Plaintiff's Choice of Forum

■ It is well-established that the plaintiff's choice of forum "should not be lightly disturbed." *Jumara,* 55 F.3d at 879. Further, "there is a strong presumption of maintaining venue where the bankruptcy case is pending." *Cont'l Airlines, Inc. v. Chrysler (In re Cont'l Airlines, Inc.),* 133 B.R. 585, 587 (Bankr.D.Del.1991).

Here, Trustee has chosen to bring this action in the District of Delaware, where the bankruptcy case and several other adversaries are pending. This factor weighs strongly against transfer.

### Defendant's Choice of Forum

■ The defendant's choice of forum is given less weight than the plaintiff's choice of venue, unless the other factors weigh "substantially" in favor of transfer. *OCB Rest. Co., LLC v. Vlahakis (In re Buffets Holdings, Inc.),* 397 B.R. 725, 728 (Bankr. D.Del.2008). Movants' choice of venue is Idaho, so this factor weighs very slightly in favor of transfer.

### Whether the Claim Arose Elsewhere

According to Movants, Trustee's causes of action arose in Idaho because "the operative facts and essential transactions occurred in Idaho at the DBSI headquarters when allegedly fraudulent or preferential payments were sent to the Movants." (Doc. # 151, at 15.) In support of this statement, Movants cite to my prior decision in *Stone & Webster, Inc. v. Couts Heating & Cooling, Inc. (In re Stone & Webster, Inc.),* Adv. No. 02–3974, 2003 WL 21356088, at *2 (Bankr.D.Del. June 10, 2003). This is a mischaracterization of the opinion, however, as I clearly stated about the avoidance action in that case: "The essential transactions simply involved the sending *and receiving* of invoices and checks." *Id.* (emphasis added). Here, the transfers at issue may have been made from DBSI in Idaho but received by Movants in their individual states of residence. Thus, it cannot be said that all of the operative facts and essential transactions occurred solely in Idaho. This factor is thus neutral.

### The Location of Books and Records

Movants argue that "the amount of documentation is extraordinarily voluminous in this case" and that this documentation is located in Boise, Idaho. (Doc. # 151, at 13.) Movants state that electronic review of the DBSI records would be "virtually impossible," and cite as evidence several pages from a hearing transcript in one of the other adversary actions proceeding before this Court. (Doc. # 151, at 14; Doc. # 152, at A25–A31.) Trustee responds that much of the necessary information regarding the syndication of commercial real estate and the sale of interests in DBSI entities is available as electronically stored information (ESI). (Doc. # 240, at 17.) An affidavit from Trustee's counsel confirms that much of DBSI's financial and

accounting data is stored as ESI. (Doc. # 240, Ex. E ¶ 2.)

In reviewing the few transcript pages submitted by Movants, I find that it is impossible to tell (due to the lack of context given) what documents related to this proceeding may or may not be available outside of Idaho. The transcript—which is taken from a hearing involving DBSI and an Idaho-based limited liability company—merely confirms that there are "hundreds and hundreds and hundreds" of boxes of documents located in Idaho and that there is an immense amount of data available electronically. (Doc. # 152, at A27, 31.) This is all to be expected in a case of this magnitude. Trustee has submitted evidence that a considerable amount of information is available as ESI and can thus be accessed from points outside of Idaho. (*See* Doc. # 240, Ex. E.) Additionally, all but one Movant is located outside of Idaho. Presumably, then, all but one of the Movants' books and records would also be located outside of Idaho.

Movants bear the burden of showing, by a preponderance of the evidence, that this factor weighs in favor of transfer. I find that they have not carried this burden, as they have not shown that information relevant to this proceeding will be unavailable anywhere other than in Idaho. This factor is thus neutral.

### The Convenience of the Parties

This factor looks at the relative physical and financial positions of the parties. With respect to the physical positions of the parties, none of the Movants resides in Delaware. (Doc. # 152, at A32–A35.) However, Trustee is bringing this action on behalf of a Delaware trust. (Case No. 08–12687, Doc. # 5775.) Trustee's office is in Newark, New Jersey, less than two hours from Delaware. Moreover, only one of the Movants, Silverhawk Realty, is located in Idaho. (*See* Doc. # 3, Ex. A.) The remaining Movants would still have to travel from their residences to Idaho and seek local counsel in Idaho. Additionally, Movants have already obtained local Delaware counsel.

■ As to the financial condition of the parties, Movants have banded together to obtain counsel and so several groups of individuals are represented by the same firms. This collaboration will help defray the cost of litigating outside of their home states. Although one of the affidavits submitted by Movants states that "there is a significant disparity between the rates charged by the Trustee's current counsel and even the best Idaho lawyers," there is no specific information provided about the rates currently charged by Movants' Delaware counsel versus those rates typically charged by similarly qualified lawyers in Idaho. Further, Trustee's litigation expenses will come out of the DBSI estates and will thus take away from the distributions to creditors. For this reason, more weight should be given to the trustee's financial considerations. This factor thus weighs against transfer.

### The Convenience of the Witnesses

The convenience of witnesses is considered only to the extent that witnesses are actually unavailable to testify in one of the venues. *Jumara,* 55 F.3d at 879. Movants argue that "substantially all of the material witnesses, including non-party witnesses, are located in Idaho." (Doc. # 151, at 12.) In support of this assertion, Movants submit an affidavit from Craig G. Taylor, a lawyer with Belnap Stewart Taylor & Morris, PLLC who represents several of the Movants. (Doc. # 152, at A21–24.) Taylor states:

> I have spoken with some fact witnesses who informed me that they were unwilling to appear in person at trial in Dela-

ware. I anticipate that many of the fact witnesses would be unwilling voluntarily to appear in person at trial in Delaware. The defendant [sic] would be at a significant disadvantage if those fact witnesses could not be compelled to appear in person at trial.

(*Id.* at A23–A24.) I find this statement to be vague and unpersuasive. Taylor does not identify any of these potential witnesses or the subject of their testimony, and says only that "some" witnesses indicated their unwillingness to testify in Delaware. "Some" could mean anything. Additionally, Taylor's anticipation that "most" witnesses would be unwilling to testify is not sufficient evidence that key witnesses will be unavailable. In any event, given the nationwide coverage for the transactions involved here, I believe that wherever the trial is held, many witnesses will appear by way of deposition transcripts. Because Movants have not carried their evidentiary burden on this factor, this factor is neutral.

### The Enforceability of the Judgment

Movants argue that this factor weighs in favor of transfer because they filed a motion to dismiss for lack of personal jurisdiction. (Doc. # 141.) Since the instant Motion was filed, I have considered the personal jurisdiction motion and ruled that this Court can in fact exercise personal jurisdiction over Movants. (Docs. ## 416 & 417.) Thus, the enforceability of the judgment has no weight here.

### Practical Considerations That Could Make Trial Easy, Expeditious, or Inexpensive

In discussing this factor, Movants simply repeat their arguments that the location of witnesses and evidence heavily favors transfer. As detailed above, neither of these considerations dictate transfer. Trustee argues that this Court's familiarity with the DBSI cases and other pending adversaries support maintaining the action in this forum. While I am undoubtedly familiar with the DBSI matters, Trustee still bears the burden of proving each element of each cause of action in each adversary proceeding before this Court. Therefore, I find that this factor is neutral.

### Administrative Difficulties Resulting from Court Congestion

Movants argue that "the Delaware Court's heavy caseload weighs in favor of transfer" because "there is only an attenuated (if any) relationship with the forum." (Doc. # 151, at 16.) Trustee counters that "the relative administrative difficulty and inefficiency that would result in both fora weighs in favor of retaining these actions in this Court." (Doc. # 240, at 18.) Trustee's response to Movants' point is inadequate, and I disagree. This factor weighs in favor of transfer.

### Public Policies of the Fora and Local Interest in Deciding Local Controversies

Movants conflate these two factors, and indeed they involve consideration of similar issues. *See, e.g., Buffets Holdings,* 397 B.R. at 729–730. Movants argue that Idaho has a "strong interest" in this matter because DBSI was a major Boise, Idaho employer. (Doc. # 151, at 16.) Additionally, Movants assert that Idaho courts have a stronger interest than Delaware courts in deciding this proceeding because of its "potential impact on Idaho residents and businesses, as well as the development of Idaho law." *Id.* Trustee responds that DBSI formed "hundreds of DBSI business entities and thousands of SPEs" as part of the fraudulent scheme. (Doc. # 240, at 18.) Trustee provides an affidavit from the in-house counsel of the DBSI Real Estate Liquidating Trust, Jeffrey Warr, who attests that DBSI created "approximately 300 Delaware limited liability companies" and required investors to make

their investments through Delaware-formed SPEs. (Doc. # 240, Ex. C ¶¶ 4–5.) Additionally, Trustee's exhibits include a list of eleven Delaware individuals and entities who invested in DBSI. (Doc. # 240, Ex. D.) Thus, Trustee argues, Delaware has a significant interest because its laws were used to harm its citizens.

I agree that Idaho, as the location of DBSI's primary operations, has a significant interest in the outcome of the DBSI bankruptcies and associated litigation. I note, however, that DBSI's scheme operated nationwide (as confirmed by the residences of the defendants named in this action, listed on Exhibit A to the Amended Complaint), and thus it is not just Idaho that has an interest in the resolution of this particular proceeding. As noted above, only one of the Movants is an Idaho resident. Trustee, on the other hand, is seeking avoidance of the transfers for the benefit of creditors (who have filed thousands of claims in these cases) all across the country. As the forum for the bankruptcy cases, Delaware has an interest in ensuring that the aim of the Bankruptcy Code—the orderly and equitable distribution of the estate to creditors—is met. Thus, I find that these factors weigh against transfer.

*Familiarity of the Judge with Applicable State Law*

Movants argue that the District of Idaho court would be better equipped to apply Idaho state law in this proceeding. I note that of the seven causes of action remaining in the Amended Complaint, four involve Idaho law. Those four causes of action (some of which are duplicative) are based on Idaho's fraudulent transfer statute; Idaho has adopted the Uniform Fraudulent Transfer Act. *See* Idaho Code Ann. § 55–910; *see also* National Conference of Commissioners on Uniform State Laws, *Legislative Fact Sheet—Fraudulent Transfer Act, Uniform Law Commission,*

http://uniformlaws.org/LegislativeFactSheet.aspx?title=Fraudulent%20Transfer%20Act (last visited Aug. 9, 2012). As fraudulent transfer claims are routine in bankruptcy cases, there is ample case law that this Court can reference to inform its decision. Thus, this factor is neutral.

### Conclusion

Movants have not carried their burden in overcoming the presumption favoring the plaintiff's choice of forum. Most of the *Jumara* factors are neutral, and the public policy and plaintiff's choice factors weigh heavily against transfer. Movants are located in several different states, so it is impossible to pick a venue that will not inconvenience many of the parties. Because Trustee is litigating this matter on behalf of DBSI's creditors—at the expense of those creditors' recovery from the estate—I conclude that Delaware is the best forum for this action. Accordingly, I will deny the Motion.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the Motion of Abe Lee Realty and Others to Transfer Venue (Doc. # 150) is **DENIED.**